IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ISRAEL GARCIA, JR., | No. 3:18:cv-00176-HZ |
| Plaintiff, | |
| v. | |
| SHERIDAN FEDERAL CORRECTIONAL INSTITUTE, an agency of the United States; RICHARD IVES, Warden of Sheridan FCI; KRISTINA BEHRENS, R.N.; ANDREW GRASLEY, M.D., JOHN DOES 1-5, | OPINION & ORDER |
| Defendants. | |

Israel Garcia, Jr.
Reg. No. 56268-060
FCI Victorville Medium #1
P.O. Box 3725
Adelanto, California 92301

       Plaintiff Pro se

/ / /

1 - OPINION & ORDER

Billy J. Williams
UNITED STATES ATTORNEY
Jared D. Hager
ASSISTANT UNITED STATES ATTORNEY
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

        Attorneys for Defendants

HERNANDEZ, District Judge:

Pro se Plaintiff Israel Garcia, formerly an inmate at the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan"), brings this action against Defendants Richard Ives, identified as the FCI Sheridan Warden, Kristina Behrens, R.N., a nurse at FCI Sheridan, Andrew Grasley, M.D., a physician at FCI Sheridan, and against FCI Sheridan itself.[1]  Generally, Plaintiff raises claims concerning the medical care he received while he was an inmate at FCI Sheridan.  More specifically, Plaintiff brings a claim against Behrens and Grasley pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), contending that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Compl. ¶¶ 22-24.  Plaintiff also brings a common law medical negligence claim against all Defendants based on Behrens's and Grasley's conduct, or lack thereof.  *Id.* ¶¶ 25-29.

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim.  They also challenge the adequacy of service of process.  I agree with Defendants that service was not properly perfected.  I also agree that the negligence claim must

---

[1] The Complaint misidentified FCI Sheridan as a "Federal Correctional Institute" rather than a "Federal Correctional Institution." ECF 1.  Plaintiff, who was represented by counsel when the case was filed, has represented himself since June 6, 2018, ECF 24, before Defendants responded to the Complaint.  Plaintiff also names John Does 1-5 as Defendants.

be dismissed because although the United States has waived its sovereign immunity for that claim under the Federal Torts Claim Act, the waiver is limited to the United States and does not extend to federal agencies or employees. I reject Defendants' argument that the Complaint fails to state a *Bivens* claim. Thus, I grant the motion directed to the negligence claim and allow Plaintiff to replead. I deny the motion as to the *Bivens* claim except as to the Doe Defendants. Although service was improper, I do not dismiss the Complaint but instead, quash the improper service and extend the time for Plaintiff to effect proper service.

BACKGROUND

In the Complaint, Plaintiff alleges that at the time relevant to this action, he was in custody at FCI Sheridan. Compl. ¶¶ 3, 10. He contends that while incarcerated there, both Behrens and Grasley were working "under color of law" for FCI Sheridan. *Id.* ¶¶ 11, 12. On December 19, 2015, Plaintiff woke up with sharp abdominal pain around 4:00 a.m., consistent with an appendix "injury." *Id.* ¶ 13. He went to the Special Housing Unit with complaints of his pain. *Id.* Behrens provided care to him and Grasley co-signed the visitation note as the supervising physician. *Id.* Plaintiff alleges that Behrens told him it was nothing and that Plaintiff was probably drinking too much coffee. *Id.* He asserts that Behrens instructed him to drink water and to lie down. *Id.*

The next day, December 20, 2015, Plaintiff continued to have symptoms of an appendix "injury." *Id.* ¶ 14. He again went to the Special Housing Unit for an evaluation of his "midline, right lower quadrant pain in his abdomen." *Id.* He alleges that he was treated for pain, but that no antibiotics were provided and no further testing was ordered. *Id.* He asserts that Behrens again saw him during this visit and told him to sleep and drink water. *Id.*

Nearly one year later, in November 2016, Plaintiff, who apparently had transferred to a different correctional institution, presented to Health Services. *Id.* ¶ 15. Lab tests and an ultrasound were ordered. *Id.* Several days later, he complained of abdominal pain. *Id.* The next day, he presented to Health Services to follow up on the previous day's complaint of abdominal pain, but he also reported night chills and pain at a level 9 out of 10. *Id.* ¶ 17. He was transferred to a local medical center where it was discovered that he had a ruptured appendix. *Id.*

Plaintiff had surgery for the appendix. *Id.* ¶ 18. He alleges that during that operation, doctors discovered "physical findings consistent with a prolonged period of inflammation, scar formation, abscess development encased around the omentum, and other abdominal structures with over a half liter of pus." *Id.* He contends that the surgeon described an explosion of the appendix with "dense fibrinous exudate." *Id.* Plaintiff contends that his appendix burst in November 2015 and the infection had spread thereafter. *Id.*

Post-operatively, Plaintiff developed complications including sepsis, small bowel obstruction, and a perforated cecum. *Id.* ¶ 19. In addition to the removal of his ruptured appendix, he had part of his intestines and part of his colon removed as well. *Id.* He alleges that he continues to experience substantial abdominal pain. *Id.*

In support of his *Bivens* claim, Plaintiff alleges that he has an Eighth Amendment right to be free from cruel and unusual punishment and that Behrens and Grasley violated his rights when they were deliberately indifferent to his serious medical needs. *Id.* ¶ 23. Plaintiff contends that Behrens and Grasley knew that Plaintiff's condition warranted intense observation and/or ultrasound. *Id.* Yet, neither was ordered. *Id.* Further, Plaintiff alleges that Behrens should have asked Grasley to "review the patient as soon as possible." *Id.* They should have ordered a CT

scan of his abdomen because his symptoms clearly indicated appendicitis. *Id.* Plaintiff alleges that the decision by Behrens and Grasley "to not officially diagnose, confirm, or treat Plaintiff's appendicitis caused unnecessary and wanton infliction of pain." *Id.*

In support of his medical negligence claim, Plaintiff incorporates his previous allegations and further alleges that each Defendant owed Plaintiff a duty of reasonable care to appropriately assess the nature and extent of his condition, as well as appropriately diagnose and treat that condition. *Id.* ¶ 26. He alleges that upon information and belief, Defendants worked for, were employed by, or were apparent agents of FCI Sheridan and the federal Bureau of Prisons. *Id.* ¶ 27. He asserts that FCI Sheridan is vicariously liable for Behrens's and Grasley's actions and omissions. *Id.* He then alleges seven specific instances of the breach of duty of care by Behrens and Grasley. *Id.* ¶ 28. He also alleges that Behrens additionally breached her duty of care when she failed to ask Grasley to evaluate Plaintiff on December 19 and 20, 2015. *Id.* ¶ 29.

Plaintiff seeks economic and non-economic damages, as well as punitive damages, reasonable attorney's fees, and costs.

## STANDARDS

I. Service of Process

Federal Rule of Civil Procedure 12(b)(5) allows a defendant to move to dismiss the action where the service of process of a summons and complaint is insufficient. Fed. R. Civ. P. 12(b)(5). Once a party challenges the sufficiency of process under Rule 12(b)(5), "the party on whose behalf service is made has the burden of establishing its validity." *Neilson v. Beck*, No. CV-94-520-FR, 1994 WL 578465, at *3 (D. Or. Oct. 18, 1994). The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion. *See Lachick v. McMonagle*,

No. CIV. A. 97-7369, 1998 WL 800325, at *2 (E.D. Pa. Nov. 16, 1998) ("Factual contentions regarding the manner in which service was executed may be made through affidavits, depositions, and oral testimony.").

II. Subject Matter Jurisdiction

"The United States, including its agencies and employees, can be sued only to the extent that it has expressly waived its sovereign immunity." *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1117 (9th Cir. 2003). Absent a waiver of sovereign immunity, federal courts have no subject matter jurisdiction in cases against the United States government. *United States v. Kitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1) addresses the court's subject matter jurisdiction. The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In resolving a Rule 12(b)(1) motion, the court may consider evidence outside of the pleadings. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *see also Dreier v. United States,* 106 F.3d 844, 847 (9th Cir. 1996) (a challenge to the court's subject matter jurisdiction under Rule 12(b)(1) may rely on affidavits or any other evidence properly before the court).

III. Failure to State a Claim

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a "facially plausible claim for

relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint must state a claim "plausible on its face" to survive a motion to dismiss, meaning the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal quotation marks omitted).  In evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party.  *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

DISCUSSION

I.  Service of Process

Federal Rule of Civil Procedure 4(i) addresses service of process on the United States and its agencies, corporations, officers, or employees.  Fed. R. Civ. P. 4(i).  To serve an

> officer or employee [of the United States] sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

Fed. R. Civ. P. 4(i)(3).

To serve a United States agency, a party must serve the United States and also send a copy of the summons and complaint by registered or certified mail to the agency.  Fed. R. Civ. P. 4(1)(2).  This method is also required for claims against an officer or employee sued in an official capacity.  *Id.*

Finally, to serve the United States, a party must (1) deliver a copy of the summons and complaint to the "United States attorney for the district where the action is brought," or to an

7 - OPINION & ORDER

assistant United States attorney or clerical employee whom the United States attorney designates in writing filed with the court clerk, or "send a copy [of the summons and complaint] by registered or certified mail to the civil-process clerk at the United States attorney's office," and (2) "send a copy of [the summons and complaint] by registered or certified mail to the Attorney General of the United States at Washington, D.C." Fed. R. Civ. P. 4(i)(1)(A), (B).

Proof of service must be made to the Court. Fed. R. Civ. P. 4(l). The record shows that the three named individual Defendants (Behrens, Grasley, and Ives), were served when a process server delivered a copy of the summonses and Complaint, on March 26, 2018, upon John Kinkade, Executive Assistant at FCI Sheridan, and that a copy of the summonses and Complaint, as well as a copy of the Return of Service, was then mailed to each of these three Defendants at FCI Sheridan by first class mail on March 30, 2018. ECF 10 (Behrens); ECF 11 (Grasley); ECF 12 (Ives). Plaintiff served FCI Sheridan by delivering, on March 26, 2018, a copy of the summons and Complaint to Michelle Volker, Records Manager at the United States Attorney's Office in Portland, Oregon, and by mailing a copy of the summons, Complaint, and Affidavit of Service to FCI Sheridan at the United States Attorney's Office in Portland by first class mail. ECF 9.

Regardless of whether Plaintiff is suing the individual Defendants in their official or individual capacities[2], Plaintiff was required to serve the United States. Plaintiff does not show

---

[2] The Complaint does not make clear the capacity in which the individual Defendants are sued. Under Ninth Circuit law, the court presumes "that officials necessarily are sued in their personal [individual] capacities where those officials are named in a complaint, even if the complaint does not explicitly mention the capacity in which they are sued." *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999). "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which

that he did so. There is no proof that Plaintiff sent a copy of the summonses and Complaint by registered or certified mail to the Attorney General of the United States in Washington, D.C. Fed. R. Civ. P. 4(i)(2) (requiring service upon the United States for actions against officers or employees named in an official capacity); Fed. R. Civ. P. 4(i)(3) (requiring service upon the United States for actions against officers or employees named in an individual capacity); Fed. R. Civ. P. (1)(A), (B) (setting forth requirements for service upon the United States). Thus, he did not perfect service on the individual Defendants. Similarly, the rule governing service upon an agency requires service upon the United States and there is no evidence that Plaintiff sent a copy of the summons directed to FCI Sheridan and a copy of the Complaint by registered or certified mail to the Attorney General in Washington, D.C. Thus, he did not perfect service upon FCI Sheridan.

Additionally, the attempted service of the individual Defendants by leaving a copy of the summons and Complaint with Kinkade is not, on this record, sufficient to accomplish service. To properly serve the individuals for claims against them in their individual capacities, Plaintiff, in addition to serving the United States, had to effect service consistent with Rules 4(e), (f), or (g). Fed. R. Civ. P. 4(i)(3). Neither Rule 4(f) nor Rule 4(g) apply here. Under Rule 4(e), Plaintiff may serve the individuals by following state law, Fed. R. Civ. P. 4(e)(1), or by (1) delivering a copy of the summons and complaint to the individual personally; (2) leaving a copy of the summons and complaint at the person's dwelling or usual place of abode with someone of

---

an officer is an agent." *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 966-67 (9th Cir. 2010) (internal quotation marks and ellipsis omitted). Based on the allegations in the Complaint, it appears that the individual Defendants are named in their individual/personal capacities.

suitable age and discretion who resides there; or (3) delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2)(A) - (C).

Under Rule 4(e)(2), the only method attempted by Plaintiff is under subsection (C). But, the record shows that Kinkade was not authorized by appointment or by law to receive service of process. Kinkade Decl. ¶¶ 1-7 (stating that he is employed as the Reentry Affairs Coordinator at FCI Sheridan and served as acting Executive Assistant one week per month from September 2011 through March 2018; explaining that Executive Assistants are not administrative assistants or secretarial staff and instead, Kinkade's role was to develop institutional plans, policies, and programs; an additional collateral duty as Executive Assistant is serving as the Public Information Officer; stating that on March 26, 2018, Kinkade was called to the lobby to receive "legal paperwork for some staff members" because Executive Assistants typically interact with outside entities on behalf of the institution; after handing him a stack of paperwork, the process server left the institution; Kinkade never represented to anyone that he was authorized to accept legal paperwork or lawsuit-related documents on behalf of a coworker; he is unaware of any staff member at FCI Sheridan authorizing any person to accept legal paperwork on his or her behalf and is unaware of any rule, policy, or regulation which automatically empowers a Bureau of Prisons staff member to accept service of process on behalf of another; he is not authorized to accept any legal materials on behalf of any other Bureau of Prison employee and he did not ever accept service for, nor is he authorized to accept service for, Behrens, Grasley, or Ives), ECF 32; Grasley Decl. ¶3 (has not authorized any Bureau of Prisons employee to accept service on his behalf; unaware of any rule, policy, practice, or procedure authorizing such service; did not

10 - OPINION & ORDER

authorize Kinkade to accept service on his behalf), ECF 33; Behrens Decl. ¶ 3 (same), ECF 34; Powley Decl. ¶¶ 1-4 (declarant is a Human Resources Specialist at FCI Sheridan and states that Ives retired on March 31, 2018; he is unaware of any instructions from Ives permitting any individual to accept service of process or other legal paperwork on his behalf and unaware of any applicable rule, policy, or regulation which automatically empowers a Bureau of Prison staff member to accept service of process on behalf of another).

Plaintiff may also perfect service upon the individual Defendants under Oregon law which allows service on an individual by personal, substituted, or office service. Fed. R. Civ. P. 4(i)(3); Fed. R. Civ. P. 4(e)(1); Or. R. Civ. P. 7D(3)(a)(i). Plaintiff's attempted service was by office service, not personal or substituted service. Or. R. Civ. P. 7D(2)(a) (personal service requires delivery of the summons and complaint to the person); Or. R. Civ. P. 7D(2)(b) (substituted service requires delivery of the summons and complaint to the person at the person's dwelling house or usual place of abode). Office service in Oregon requires leaving a copy of the summons and complaint at the office of the person to be served, during normal working hours, and "with the person who is apparently in charge," followed by mailing a copy of the summons and complaint to the defendant at the defendant's dwelling house or usual place of abode or defendant's place of business. Or. R. Civ. P. 7D(2)(c).

Here, Kinkade, as an Executive Assistant, may or may not have been a "person who is apparently in charge." As explained above, Defendants' Declarations establish that Kinkade was not "an agent authorized by appointment or by law to receive service of process" as required to satisfy Rule 4(e)(2)(C). The standard under the Oregon rule, however, is a "person who is apparently in charge." Given the differing requirements, the record showing that Kinkade was

11 - OPINION & ORDER

not "an agent authorized by appointment or by law to receive service of process" does not necessarily establish he was not "a person who is apparently in charge." The test in Oregon is whether the "person physically receiving the summons [has] a business duty to insure that the defendant received the summons." *Boyd v. Boyd*, 131 Or. App. 194, 198-99, 884 P.2d 556, 559 (1984).

In considering the Oregon requirement, cases have discussed the process server's descriptions of the person served as well as statements or conduct indicating that the person receiving service of process is "apparently in charge." Thus, in *Busher v. Berthiaume*, No. 3:16-cv-01722-HZ, 2017 WL 5615166, at *4 (D. Or. Nov. 21, 2017), I concluded that service was not perfected under Oregon Rule 7D(2)(c) where the summons was left with the "financial manager" who was listed as "Jane Doe as Accountant" on the process server's proof of service and the record had no facts suggesting that the financial manager owed any business duty to the defendant. In another 2017 case, Judge Beckerman assessed whether office service on prison employees was valid. *Wesley v. Gulick*, No. 3:15-cv-00440-SB, 2017 WL 8950508, at **6-7 (D. Or. Aug. 25, 2017), *adopted in part, rejected in part by J. Simon*, 2017 WL 4881580 (D. Or. Oct. 30, 2017). There, the record showed that the process server attempting to serve the summons and complaint on prison staff went to the prison's administration building, the only building on the prison campus independently accessible to a process server, and asked the receptionist if he could speak to the individual who could accept service of a summons and complaint on behalf of prison employees. *Id.* In response, the receptionist summoned the prison's legal information officer who protested she could not accept service. *Id.* But, the legal information officer did not advise the process server of other personnel authorized to accept service and would not allow the

12 - OPINION & ORDER

process server to serve the individual defendants. *Id.* Judge Beckerman found that in response to the process server's request to see an individual who could accept service of process for named individuals, the receptionist recognized the legal information officer as being "'apparently in charge' for the purpose of handling legal materials." *Id.* Thus, service was consistent with that portion of Oregon Rule 7D(2)(c). *Id.* (ultimately concluding that service was invalid under Oregon Rule 7D(2)(c) because the required subsequent mailing did not conform to the rule's requirements). And, in a 2008 case, serviced complied with Oregon Rule 7D(2)(c) where the process server's affidavit stated that the summons and complaint was left with a woman in the defendant's office who was apparently in charge. *MTEC, LLC v. Nash*, No. CV 08-563-AC, 2008 WL 4723483, at *4 (D. Or. Oct. 20, 2008).

Here, the only evidence in the record are the Returns of Service filed by Plaintiff which state only that Kinkade was "a person authorized to accept service." ECF 10, 11, 12. There are no facts regarding how the process server came to the conclusion that Kinkade was so authorized and no facts indicating that Kinkade is a person "apparently in charge." Because Plaintiff bears the burden of showing that service was properly perfected, Plaintiff must establish Kinkade's position in this regard. Plaintiff fails to do so.

In summary, in order to perfect service on FCI Sheridan and any of the three individual Defendants, Plaintiff was required to serve the United States consistent with Rule 4(l)(1). Because Plaintiff did not follow-up delivery of the summons and complaint to the United States Attorney's Office in Portland with a registered or certified mailing to the Attorney General of the United States in Washington, D.C., his service on FCI Sheridan was not complete. Because he failed to serve the United States Attorney's Office in Portland as to any of the three individual

Defendants and did not serve the Attorney General of the United States in Washington, D.C., as to any of the three individual Defendants, his service on the three individual Defendants was imperfect. Finally, because he fails to establish that he properly served any of the three individual Defendants under applicable federal or Oregon law, service on the three individual Defendants is imperfect for that reason as well.

If service is ineffective, the court may dismiss the action or quash the service. *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2016). "The choice between dismissal and quashing service of process is in the district court's discretion." *Stevens v. Security Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976). "Service will ordinarily be quashed and the action preserved where 'there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly.'" *Bravo v. Cty of San Diego*, No. C 12–06460 JSP, 2014 WL 555195, at *1 (N.D. Cal. Feb. 10, 2014) (quoting 5C Wright & Miller, *Federal Practice and Procedure* § 1354 (1969)). Additionally, upon a showing of "good cause," the court "must" extend the time for service outside of the ninety–day period provided for in Rule 4(m). Fed. R. Civ. P. 4(m).

The appropriate route here is to quash service and order Plaintiff to re-serve in compliance with the rules. Defendants suggest that in accordance with Rule 4(m), Plaintiff be given an additional ninety days to perfect service, Defs.' Mot. 12, ECF 30, and that he be required to use Form USM-285 to instruct the United States Marshal's Service to serve a copy of the summonses and anticipated amended complaint in conformance with the applicable Federal Rules of Civil Procedure. *Id.* at 2. I agree with Defendants that Plaintiff be given additional time. However, I note that Plaintiff paid the filing fee and has not been accorded *in forma pauperis* status. Because indigence is a prerequisite for service by the United States Marshal's

Service, *see* 28 U.S.C. § 1915(d), I am simultaneously entering a separate Order requiring the Clerk's Office to send Plaintiff an application to proceed *in forma pauperis* along with the United States Marshal Form USM-285. That Order will instruct Plaintiff to apply for *in forma pauperis* status if he desires to proceed with this action, to wait for approval of that application, and then to complete the service-related forms. Given the additional step needed to obtain *in forma pauperis* status before Plaintiff can request service by the United States Marshal's Service, I allow an additional 150 days from the date of this Opinion & Order to perfect service.

II. Subject Matter Jurisdiction

Plaintiff's negligence claim is a tort claim, which, if brought against an employee of the United States acting within the scope of his or her office or employment, must be brought under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 2679(b)(1); *Reed ex rel. Allen v. U.S. Dep't of Interior*, 231 F.3d 501, 504 (9th Cir. 2000) (the "United States can be sued only to the extent it has waived its sovereign immunity"); 28 U.S.C. § 1346(b) (FTCA provides sovereign immunity waiver for the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment").

Plaintiff named FCI Sheridan as a Defendant. FCI Sheridan is a federal correctional institution run by the federal Bureau of Prisons. *See* https://www.bop.gov. I construe the negligence claim against FCI Sheridan to have been brought against the agency, meaning the Bureau of Prisons. The United States is the only proper defendant in a suit brought pursuant to the FTCA. *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998); *Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998). "A claim against [a federal agency] in its own name is not a claim against the United States." *Kennedy*, 145 F.3d at 1078. Nor is an agency a proper

defendant under the FTCA. *Shelton v. U.S. Customs Serv.*, 565 F.2d 1140, 1141 (9th Cir. 1977). Thus, FCI Sheridan/Bureau of Prisons is not a proper defendant in the negligence claim. As to the individuals, the Government submits a formal certification that Behrens and Grasley were acting within the scope of their employment at the relevant time and in regard to their care of Plaintiff. Renata Gowie Decl. ¶¶ 1-3, ECF 49-1. 29 U.S.C. § 2679(d). With this, the claims against Behrens and Grasley must also be brought under the FTCA. The certification fails to mention Ives, although other than being identified as the FCI Warden, Ives is never mentioned again in the Complaint. Thus, I construe the negligence claim as having been brought against Behrens, Grasley, and FCI Sheridan/Bureau of Prisons and not against Ives. Accordingly, no "course and scope" certification for Ives is required.[3]

Upon the Attorney General's certification, the individual employee is dismissed from the action and the United States must be substituted in place of the employee. *Osborn v. Haley*, 549 U.S. 225, 229-30. The litigation is thereafter governed by the FTCA. *Id.* Thus, here, the individual Defendants are also not proper defendants in the negligence claim. The negligence claim is dismissed but may be repleaded in an amended complaint as an FTCA claim against the United States.

III. *Bivens* Claim

The Eighth Amendment governs the provision of medical treatment to inmates. *E.g.*, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A prison official violates the Eighth Amendment

---

[3] If, in any amended complaint, Plaintiff brings the negligence claim against Ives in addition to bringing it against the United States, and if the United States certifies pursuant to 29 U.S.C. § 2679(d) that Ives was acting in the course and scope of his employment, Ives will be dismissed.

16 - OPINION & ORDER

when he acts with deliberate indifference to the serious medical needs of an inmate." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks omitted). To state an Eighth Amendment deliberate indifference claim, the inmate

> must first "objectively show that he was deprived of something 'sufficiently serious.'" *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir.2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994)). "A deprivation is sufficiently serious when the prison official's act or omission results 'in the denial of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Farmer*, 511 U.S. at 834, 114 S. Ct.1970).
>
> Next, the inmate must "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Foster*, 554 F.3d at 812. To satisfy this subjective component of deliberate indifference, the inmate must show that prison officials "kn[e]w [] of and disregard[ed]" the substantial risk of harm, but the officials need not have intended any harm to befall the inmate; "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 837, 842, 114 S. Ct. 1970.

*Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013).

Mere negligence in diagnosing or treating a prisoner's medical condition, without more, does not meet the deliberate indifference standard. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Similarly, a difference of opinion between the prisoner and a medical provider, or between medical providers, concerning the appropriate course of treatment does not support an Eighth Amendment claim. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Defendants argue that these governing legal standards "make clear that [Plaintiff] has failed to plead facts sufficient to show that either Behrens or Grasley was deliberately indifferent to his serious medical needs." Defs.' Mot. 9. In support, Defendants do not rely solely on the allegations in the Complaint. Instead, they cite to Plaintiff's medical records which they submit

in support of their motion to dismiss. *See* Hager July 20, 2018 Decl., Exs. 1-8, ECF 31- ECF 31-8; *see also* Hager July 10, 2018 Decl., Ex. 1, ECF 29 - ECF 29-1.

Defendants note that while a Rule 12(b)(6) motion is generally assessed by referring only to the contents of the Complaint, the court may consider documents which are not physically attached to the Complaint but whose contents are alleged in a complaint and whose authenticity no party questions. Defendants suggest that the Plaintiff's Bureau of Prisons medical records meet this standard because Plaintiff refers to his medical treatment in the Complaint. I disagree.

"On a motion to dismiss, [the court] may consider materials incorporated into the complaint or matters of public record. *Coto Settlement v. Eisenberg*, 593 F.3d 11031, 1038 (9th Cir. 2010); *cf.* Fed. R. Civ. P. 12(d) (explaining that, should the district court decide to consider other materials on a Rule 12(b)(6) motion, the motion is converted into a motion for summary judgment and the opposing party given reasonable time to respond). The doctrine of incorporation by reference also allows the court to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question, and there are no disputed issues as to the document's relevance. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705, 706 n.4 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006). However, the mere mention of the existence of a document is insufficient to incorporate the contents of a document. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Plaintiff's Complaint does not expressly incorporate any of his medical records. The contents of the records are not alleged in the Complaint. Those medical records are not matters

of public record. Thus, to consider them on a motion to dismiss, the Complaint must necessarily rely on them. That is simply not the case here. Plaintiff's recitation of the medical care he received and the allegations of inadequate diagnosis and treatment could be proven by Plaintiff's own testimony recalling the events. Thus, the claims do not necessarily rely on the records. Although Defendants may seek to defeat the claims or challenge Plaintiff's recollection and credibility with the medical records, they are not properly considered on a motion to dismiss under the incorporation by reference doctrine.

IV. Doe Defendants

The Complaint's caption names John Does 1-5 as Defendants. The Complaint fails to mention them again. They are not proper Defendants in a *Bivens* claim absent allegations of personal involvement in the conduct at issue. *Iqbal*, 556 U.S. at 677 (in *Bivens* action, each government official "is only liable for his or her own misconduct"); *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991) (respondeat superior liability is inapplicable to *Bivens* actions); *Roark v. United States*, No. 6:12-cv-01354-AA, 2013 WL 1071778, at *4 (D. Or. Mar. 12, 2013) (to state a *Bivens* claim, the plaintiff must allege facts showing that an individual was personally involved in the deprivation of his or her constitutional rights). Thus, they are dismissed from the *Bivens* claim because there are insufficient allegations to support the claim against them. On the negligence claim, as with Ives, because the Complaint never mentions any of the Doe Defendants again, I construe the claim as not having been brought against these Defendants.

CONCLUSION

Defendants' motion to dismiss [30] is granted in part and denied in part as follows: (1) the motion is granted as to the negligence claim; (2) the motion is denied as to the *Bivens* claim

except as to the Doe Defendants; (3) the Doe Defendants are dismissed; (4) FCI Sheridan is dismissed; and (5) service is quashed and Plaintiff is ordered to perfect service within 150 days of the date of this Opinion & Order and as further explained in the simultaneously-filed Order addressing service. Any amended complaint which substitutes the United States as a Defendant in the negligence claim brought under the FTCA and which re-alleges the *Bivens* claim, shall be filed within thirty (30) days of the date of this Opinion & Order.

IT IS SO ORDERED.

Dated this 19 day of Feb, 2019

Marco A. Hernandez
United States District Judge