IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ISRAEL GARCIA, JR.,

        Plaintiff,

    v.

RICHARD IVES, Warden of Sheridan FCI; KRISTINA BEHRENS, R.N.; ANDREW GRASLEY, M.D./Clinical Director; DWAYNE M. JOHNSON, N.P.; BILLY H. ROMERO, Warden of Talladega FCI; COURTNEY ARNOLD, R.N.; SABRINA THOMAS, R.N.; MOUNIR MOURTADA, M.L.P.; WILLIAM MARK HOLBROOK, M.D./Clinical Director; DOE(S) 1-11; all defendants sued in their individual capacity; THE UNITED STATES BUREAU OF PRISONS, a Federal Agency; THE UNITED STATES OF AMERICA, a corporation; THE UNITED STATES,

        Defendants.

No. 3:18-cv-0176-HZ

OPINION & ORDER

Israel Garcia, Jr.
USP Victorville
P.O. Box 3725
Adelanto, California 92301

    Plaintiff Pro se

1 – OPINION & ORDER

Billy J. Williams
UNITED STATES ATTORNEY
Jared D. Hager
ASSISTANT UNITED STATES ATTORNEY
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Pro se Plaintiff Israel Garcia, Jr., brings this action against Defendants the United States, the United States Bureau of Prisons ("BOP"), and several individuals for claims arising from his medical treatment while incarcerated at Federal Correctional Institution Sheridan ("FCI Sheridan") and Federal Correctional Institution Talladega ("FCI Talladega"). Defendants move to dismiss Plaintiff's Amended Complaint in part for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and for failure to state a claim. For the reasons discussed, the Court grants Defendants' Motion to Dismiss [ECF 86].

## BACKGROUND

On January 26, 2018, Plaintiff filed this action alleging claims related to medical care he received at FCI Sheridan following complaints of abdominal pain. Compl., ECF 1. The government moved to dismiss those claims. ECF 30. On February 20, 2019, the Court denied the government's motion as to Plaintiff's Eighth Amendment deliberate indifference claim brought pursuant to *Bivens v. Six Unknown Named Fed. Narcotics Agents*, 403 U.S. 388 (1971), because the government's grounds for dismissal relied on Plaintiff's medical records, which could not be properly considered on a motion to dismiss. Op. & Order 16-19, ECF 50. The Court dismissed John Does 1-5 because the Complaint failed to raise any allegations against the Doe Defendants. *Id.* at 19. Finally, the Court granted the government's motion as to Plaintiff's medical negligence

claim but gave him leave to file an amended complaint so he could substitute the United States as the proper defendant under the Federal Tort Claims Act ("FTCA"). *Id.* at 20.

In the Amended Complaint, filed April 22, 2019, Plaintiff significantly expanded the scope of this action. In addition to including the United States as a defendant to the FTCA claims, Plaintiff raises new claims against new Defendants for injuries stemming from an appendectomy he received while housed at FCI Talladega approximately one year after the events at FCI Sheridan took place. Am. Compl. ¶¶ 8-12, ECF 55. For the claims related to his medical treatment at FCI Sheridan, Plaintiff lists as Defendants: Richard Ives, Warden of FCI Sheridan ("Warden Ives"); Andrew Grasley, M.D., FCI Sheridan Clinical Director ("Dr. Grasley"); Kristina Behrens, R.N. ("RN Behrens"); and Ryan C. Johnson, N.P., ("NP Johnson").[1] As to the events at FCI Talladega, Plaintiff names as Defendants: Billy H. Romero, Warden of FCI Talladega ("Warden Romero"); William Mark Holbrook, M.D., FCI Talladega Clinical Director ("Dr. Holbrook"); Courtney Arnold, R.N. ("RN Arnold"); Sabrina Thomas, R.N. ("RN Thomas"); and Mounir Mourtada, M.L.P. ("MLP Mourtada") (collectively "Talladega Defendants"). Plaintiff also lists as Defendants Does 1-11 but only makes specific allegations as to three unidentified individuals.

Plaintiff was incarcerated at FCI Sheridan from December 18, 2013 to April 25, 2016. First Hager Decl., Ex.2, ECF 29-2.[2] He was housed at FCI Talladega from May 16, 2016, until

---

[1] Plaintiff does not dispute the government's assertion that the name of the nurse practitioner who treated him is Ryan Johnson, not Dwayne Johnson. Gov't Mot. Dismiss 9 n.4, ECF 86 (citing Dwayne Johnson Decl. ¶¶ 2-3, ECF 89; Ryan Johnson Decl. ¶¶ 1,4, ECF 87). "Dwayne Johnson is a case manager without medical training who does not work in FCI Sheridan's medical unit." *Id.* Therefore, the Court construes the claims as being brought against Nurse Practitioner Ryan Johnson.

[2] The relevant facts are taken from the Amended Complaint or otherwise subject to judicial notice. The Amended Complaint expressly incorporates by reference Plaintiff's medical records submitted in support of the government's previous motion to dismiss. *See* Am. Compl. ¶¶ 18, 20

3 – OPINION & ORDER

December 26, 2017, at which point he was transferred to FCI Victorville, where has been since. *Id.*; Am. Compl. ¶ 17.

On December 19, 2015, RN Behrens and "another medical staff" ("Doe 1") saw Plaintiff for complaints of vomiting and lower abdominal pain. Am. Compl. ¶ 18. "Plaintiff told them that it might be the appendix and they told [him] that he didn't know what he was talking about." *Id.* They gave him medication to treat his pain and nausea and instructed to him follow up at sick call as needed or return immediately if his condition worsened. *Id.*; Second Hager Decl., Ex. 1 ("Gov't Ex. 1"), at 3, ECF 31-1. Dr. Grasley cosigned the treatment record. Am. Compl. ¶ 18; Gov't Ex. 1 at 5.

The next day, Plaintiff told "Correctional Officer" ("Doe 2") that he was in a lot of pain again, and asked Officer Doe to call medical staff. Am. Compl. ¶ 20. RN Behrens saw Plaintiff at his cell. *Id.* After consulting with NP Johnson over the phone, RN Behrens gave Plaintiff medication for pain and nausea. *Id.*; Second Hager Decl., Ex. 2 ("Gov't Ex. 2"), ECF 31-2. He was again instructed to return if his symptoms worsened. Gov't Ex. 2 at 3. Dr. Grasley cosigned the treatment record the following day. *Id.* at 3-4.

On December 22, 2015, Plaintiff told Doe 2[3] that he was in a lot of pain and could not lay down. Am. Compl. ¶ 22. Doe 2 asked Plaintiff if he had called health services, to which Plaintiff

---

(citing medical records from FCI Sheridan previously filed as ECF 31-1 and ECF 31-2), ¶ 24 ("Plaintiff incorporates [ECF 31-3] including all the Pages as stated fully herein."); ¶¶ 28, 30 (relying on medical records filed as ECF 31-4), ¶ 32 (citing medical records filed as ECF 31-5 and ECF 31-7). Because the Amended Complaint relies on the medical records, the Court considers them in deciding Defendants' motion. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[3] Plaintiff does not specify whether the unidentified correctional officer(s) he spoke to is the same person or different individuals. This ambiguity, however, need not be resolved and does not change the analysis. For simplicity, the Court will refer to the unidentified correctional officer(s) as "Doe 2."

responded that he had and "they just told him that [he] needs to drink water, lay down and that they gave him 2 shots for pain and nausea." *Id.* Plaintiff asserts that he "was in a lot of pain on and off for about 11 months [and] took all kinds of pain pills during" that time. *Id.* It is unclear if BOP medical staff prescribed the pills. Plaintiff does not allege that he sought further medical treatment related to his abdominal pain while housed at FCI Sheridan.

After he was transferred to FCI Talladega, and approximately 11 months after his treatment at FCI Sheridan, RN Thomas saw Plaintiff on November 15, 2016 for complaints of severe abdominal pain lasting three days. *Id.* at ¶ 24. RN Thomas told Plaintiff that his discomfort was likely due to gas and that a lot of inmates were getting food poisoning. *Id.* RN Thomas disagreed with Plaintiff's assessment that his pain was due to issues with his appendix. *Id.* Plaintiff reported his pain improved with ibuprofen. Second Hager Decl., Ex. 3 ("Gov't Ex. 3"), at 6, ECF 31-3. He further reported that he had a previous issue with abdominal pain during the time he was housed at FCI Sheridan and that it improved on its own. *Id.* RN Thomas ordered several laboratory tests and discharged Plaintiff with instructions to return if his condition worsened. *Id.* at 7. MLP Mourtada cosigned the treatment note. *Id.* at 8; Am. Compl. ¶ 24.

Two days later, Plaintiff presented at medical services to undergo an x-ray ordered by RN Thomas and MLP Mourtada. Am. Compl. ¶ 26. A substitute x-ray technician ("Doe 3") "told Plaintiff that [his] case was not important" and "to wait until next week when the regular[] technician came back." *Id.*

On the morning of November 21, 2016, Plaintiff saw MLP Mourtada to follow up on his vitals and pain. *Id.* at ¶ 28. Plaintiff reported he still had abdominal pain and was constipated. *Id.* He asserts MLP Mourtada "falsified the medical this day for not reporting all the vital signs and pain Plaintiff had for months." *Id.* MLP Mourtada ordered an abdominal ultrasound and told

5 – OPINION & ORDER

Plaintiff "to go back to his unit." *Id.*; Second Hager Decl., Ex. 4 ("Gov't Ex. 4"), at 4, ECF 31-4. Later that evening, "Plaintiff was called to Medical by [RN] Arnold," where he reported that his abdominal pain was worse when eating or walking, and that he was experiencing constipation and loss of appetite. Am. Compl. ¶ 30 (citing Gov't Ex. 4). His temperature was 100.3 degrees. Gov't Ex. 4 at 1. RN Arnold instructed Plaintiff to follow up the next morning to have blood work drawn. *Id.* at 2. Dr. Holbrook cosigned the treatment record. *Id.* at 3.

The next morning, Plaintiff went to medical services with "extreme, intense pain in his abdominal area." Am. Compl. ¶ 32. He "explained he was experiencing chills, sweating profusely at night, no bowel movement in about 11 days and fever." *Id.*; *see also* Second Hager Decl., Ex. 5 ("Gov't Ex. 5"), at 2, ECF 31-5. Someone "did some X-Rays and told Plaintiff he was going to be sent to the Hospital and to tell the surgeon that [MLP] Mourtada said for him to take out Plaintiff's gallbladder." Am. Compl. ¶ 32; *see also* Gov't Ex. 5 at 3. At the hospital, diagnostic imaging revealed Plaintiff's appendix had burst and he underwent emergency surgery. Am. Compl. ¶ 32; Gov't Ex. 5 at 1. Plaintiff had a second surgery on November 29, 2016, to remove part of his intestines and colon. Am. Compl. ¶ 34; Second Hager Decl., Ex. 7 ("Gov't Ex. 7"), at 14-15, ECF 31-7.

Plaintiff brings two causes of action. In Counts I and II, Plaintiff alleges a *Bivens* claim against all Defendants for acting with deliberate indifference to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Am. Compl. ¶¶ 36-52. In Count III, Plaintiff claims all Defendants are liable under the FTCA for medical negligence and intentional infliction of emotional distress. *Id.* at ¶¶ 53-61. Plaintiff requests declaratory and injunctive relief, damages in the amount of $250 million, punitive

damages, fees and costs, and that the Court hold all Defendants liable for all his future medical expenses. *Id.* at ¶¶ A-I.

## STANDARDS

Defendants move to dismiss the Amended Complaint in part under Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6).

**I.     Rule 12(b)(1)**

A motion to dismiss brought pursuant to Rule 12(b)(1) addresses the court's subject matter jurisdiction. The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In resolving a Rule 12(b)(1) motion, the court may consider evidence outside of the pleadings. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *see also Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (a challenge to the court's subject matter jurisdiction under Rule 12(b)(1) may rely on affidavits or any other evidence properly before the court).

**II.    Rule 12(b)(2)**

Under Rule 12(b)(2), a defendant may move to dismiss on the grounds that the court lacks personal jurisdiction. Personal jurisdiction over an out-of-state defendant involves two questions: whether jurisdiction exists under the forum state's long-arm statute and, if so, whether asserting personal jurisdiction is consistent with the limitations of the Due Process Clause of the United States Constitution. *Witt Co. v. RISO, Inc.*, 948 F. Supp. 2d 1227, 1248 (D. Or. 2013) (citing *Pebble Beach Co v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)).

The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or

relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (internal quotation marks and citation omitted). To satisfy this due process protection, the plaintiff must show that the defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1015-16 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### III.     Rule 12(b)(3)

Under Rule 12 (b)(3), a defendant may move for dismissal based on improper venue. "The plaintiff bears the burden of showing that venue is proper." *Adidas Am., Inc. v. Cougar Sport, Inc.*, No. 3:15–cv–01856–SI, 2016 WL 1054581, at *1 (D. Or. Mar. 14, 2016) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)). In resolving a Rule 12(b)(3) motion, "the Court need not accept the pleadings as true, and may consider facts outside of the pleadings." *Kwiecinski v. Medi–Tech Int'l Corp.*, No. 3:14–cv–01512–BR, 2015 WL 3905224, at *2 (D. Or. June 25, 2015) (internal quotation marks omitted); *see also Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) ("Analysis under Rule 12(b)(3)[,] permits the district court to consider facts outside of the pleadings"). If venue is improper, the court may dismiss the action or, "if it be in the interest of justice," may transfer the case "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

### IV.     Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party.

8 – OPINION & ORDER

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

Courts must liberally construe pro se pleadings. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Additionally, a court cannot dismiss a pro se complaint without first explaining to the plaintiff the deficiencies of the complaint and providing an opportunity to amend. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). However, dismissal of a pro se complaint without leave to amend is proper only if it is clear that the deficiencies of the complaint could not be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

///

///

///

**DISCUSSION**

**I.     First Claim: Eighth Amendment Violation**

In order to prevail on an Eighth Amendment claim that medical treatment has been denied or inadequately rendered, a prisoner must establish that there has been "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002). A determination of "deliberate indifference" requires an examination of two elements: (1) the seriousness of the prisoner's medical needs, and (2) the nature of the defendant's response. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). To find deliberate indifference, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id.* at 1060.

**A.     Talladega Defendants**

The Talladega Defendants move under Rule 12(b)(2) to dismiss Plaintiff's *Bivens* claim for lack of personal jurisdiction. An exercise of personal jurisdiction must satisfy the requirements of the long-arm statute of the forum state and comport with the principles of federal due process. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir.1995). Because Oregon's "long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004); *see also* Or. R. Civ. P. 4(L). "Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994) (citing *Int'l Shoe*

*Co.*, 326 U.S. at 316). "There are two types of personal jurisdiction: general and specific." *Ziegler*, 64 F.3d at 473. Plaintiff has the burden of showing personal jurisdiction. *Boschetto*, 539 F.3d at 1015.

Here, the Talladega Defendant's conduct took place in Alabama. Plaintiff does not allege the Talladega Defendants have any contacts with Oregon. *Cf.* Arnold Decl., ECF 90; Smith Decl., ECF 91; Mourtada Decl., ECF 92; Holbrook Decl., ECF 93. Instead, he argues 28 U.S.C. § 1391(e) "makes clear that all defendants are subject to the jurisdiction and venue of the District Court of Oregon." Pl.'s Resp. 9, ECF 97. However, "[s]ection 1391(e) only applies to actions in which the defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority. It does not apply to actions for money damages brought against federal officials in their individual capacities." *Gilbert v. DaGrossa*, 756 F.2d 1455, 1460 (9th Cir. 1985). Plaintiff brings this action against the Talladega Defendants in their individual capacities. Accordingly, the Talladega Defendants, as well as Doe 3, are dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

### B. The United States and Bureau of Prisons

The government moves to dismiss Plaintiff's *Bivens* claim for lack of subject matter jurisdiction. The doctrine of sovereign immunity bars suits against the United States and its agencies, such as the BOP. *See*, *e.g.*, *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1117 (9th Cir. 2003) ("The United States, including its agencies and its employees, can be sued only to the extent that it has expressly waived its sovereign immunity."). No suit may be brought against the United States or its agencies unless the United States consents to be sued. *See Gilbert*, 756 F.2d at 1458. Further, "[s]overeign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510

U.S. 471, 475 (1994). Accordingly, absent a waiver of immunity, this Court lacks subject matter jurisdiction over Plaintiff's claims against the BOP as a federal government agency.

Plaintiff cannot bring a claim against the United States because it has not waived sovereign immunity to a *Bivens* action. *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991) ("The courts lack subject matter jurisdiction to hear constitutional damage claims against the United States because the United States has not waived sovereign immunity with respect to such claims."). Likewise, a *Bivens* claim may not be brought against a federal agency, such as the BOP. *See Meyer*, 510 U.S. at 484-86. Therefore, the Court grants the government's Rule 12(b)(1) motion and dismisses the *Bivens* claims brought against the United States and BOP for lack of subject matter jurisdiction.

### C. Public Health Service Officers

RN Behrens and NP Johnson move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction because, as Public Health Service ("PHS") officers, they are statutorily immune from suit. The FTCA provides the exclusive remedy for claims related to a PHS officer's medical treatment. 42 U.S.C. § 233(a). Indeed, § 233(a) grants "absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010).

Plaintiff's contends that *Levin v. United States*, 568 U.S. 503 (2013), forecloses the argument that RN Behrens and NP Johnson are statutorily immune from suit. Plaintiff correctly notes that the Supreme Court held in *Levin* that "the Gonzalez Act (10 U.S.C. § 1089(e)) abrogates the FTCA's intentional tort exception at 28 U.S.C. § 2680(h)" for battery suits alleging malpractice by military medical personnel. Pl.'s Resp. 10; *see also Levin*, 568 U.S. at 518.

However, *Levin* expresses no opinion on the immunity granted to PHS officers by § 233(a) and, contrary to Plaintiff's assertion, did not hold "that PHS officers are liable in any cause of action arising out of a negligent or wrongful act or omission in the performance of medical, dental, or related health care functions." Pl.'s Resp. 10. Therefore, Plaintiff's reliance on *Levin* is unavailing.

Plaintiff further argues RN Behrens and NP Johnson are not entitled to immunity because they have not established that they were acting within the scope of their employment. However, scope of employment certification by the Attorney General is not a prerequisite to immunity under § 233(a); instead, "a defendant may make that proof pursuant to the ordinary rules of evidence and procedure." *Hui*, 559 U.S. at 811 (noting "proof of scope is in most § 233(a) cases established by a declaration affirming that the defendant was a PHS official during the relevant time period."). RN Behrens and NP Johnson have submitted declarations and copies of their PHS orders demonstrating that they were PHS officers acting within the scope of their employment during the relevant time period. *See* Ryan Johnson Decl.; Behrens Decl., ECF 88. Therefore, the *Bivens* claims brought against RN Behrens and NP Johnson are preempted by the FTCA. Accordingly, the Court dismisses the claims against the PHS officers pursuant to Rule 12(b)(1).

### D.     Failure to State a Claim

The government moves to dismiss the claims against the remaining individual Defendants—Warden Ives, Dr. Grasley, and the rest of the Doe Defendants—because the allegations in the Amended Complaint fail to state a cognizable claim for relief. To state a *Bivens* claim, a plaintiff must allege facts showing that the defendant was personally involved in the deprivation of his or her constitutional rights. *Iqbal*, 556 U.S. at 677 (in *Bivens* action, each government official "is only liable for his or her own misconduct"); *Terrell v. Brewer*, 935 F.2d

1015, 1018 (9th Cir. 1991) (respondeat superior liability is inapplicable to *Bivens* actions); *Roark v. United States*, No. 6:12-cv-01354-AA, 2013 WL 1071778, at *4 (D. Or. Mar. 12, 2013) (plaintiff must allege facts showing personal involvement).

As a preliminary matter, besides listing Does 4-11 in the caption, the Amended Complaint fails to mention them again. Does 4-11 are therefore dismissed from the *Bivens* claim because there are no allegations to support a claim against them.

Plaintiff does not allege Warden Ives or Dr. Grasley were personally involved in his allegedly unconstitutional medical care. Plaintiff broadly asserts all Defendants denied him proper treatment despite knowing the severity of his condition, but "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (citing *McCarthy v. Mayo*, 827 F.2d 1310, 1317 (9th Cir. 1987)). Notably, Plaintiff claims Warden Ives should be found liable under a theory of "supervisor liability." Am. Compl. ¶ 52. A *Bivens* action, however, cannot be premised on respondeat superior liability. *Terrell*, 935 F.2d at 1018.

Further, Dr. Grasley's participation was limited to reviewing and signing Plaintiff's medical records. Am. Compl. ¶¶ 18, 20; Gov't Ex. 1 at 5; Gov't Ex. 2 at 3-4. At most, Dr. Grasley's conduct can be considered negligent; however, negligence—even gross negligence—is insufficient to establish deliberate indifference to serious medical needs. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) (explaining "[d]eliberate indifference is a high legal standard," and that medical malpractice or gross negligence is insufficient to establish deliberate indifference to serious medical needs). Because Plaintiff has failed to state a claim against Warden Ives and Dr. Grasley, the Court dismisses them from the *Bivens* claim under Rule 12(b)(6).

The only remaining Defendants to the *Bivens* claim are Does 1 and 2. Plaintiff alleges Doe 1 accompanied RN Behrens to the December 19, 2015 appointment where he first complained of abdominal pain. Am. Compl. ¶ 18. Doe 1 disagreed with Plaintiff's lay assessment that his appendix was the cause of his pain, gave him medication to treat his symptoms, and advised him to drink fluids and rest. *Id.* As noted, however, "[m]ere negligence in diagnosing or treating a [prisoner's] medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 106). Further, a difference of opinion between a patient and a medical provider, or between medical providers, concerning the appropriate course of treatment does not state a claim of deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Accordingly, Doe 1 is dismissed because Plaintiff's allegations do not state a claim of deliberate indifference.

Finally, Plaintiff alleges that on December 20, 2015, he told Doe 2 that he was in a lot of pain and asked him to call medical staff for help, which the correctional officer did. Am. Compl. ¶ 20. Two days later, Plaintiff told Doe 2 that he was in pain and was unable to lay down. *Id.* at ¶ 22. Doe 2 asked Plaintiff if he had reported his symptoms to health services, to which Plaintiff responded that "he did and they just told him that [he] needs to drink water, lay down and that they gave him 2 shots for pain and nausea." *Id.* As alleged, Doe 2 ensured Plaintiff's complaints of pain were brought to the attention of medical staff, which falls well short of the deliberate indifference standard. Accordingly, Doe 2 is dismissed pursuant to Rule 12(b)(6).

In sum, the Court dismisses the *Bivens* claims against all Defendants. The claims against the Talladega Defendants are dismissed without prejudice so that Plaintiff may, if he chooses, file those claims in a court that has personal jurisdiction over the Talladega Defendants. The

*Bivens* claims against the remainder of the Defendants are dismissed with prejudice because it is clear that the deficiencies of the Amended Complaint cannot be cured by amendment. *Lopez*, 203 F.3d at 1130-31.

## II.    Second Claim: Federal Tort Claims Act

Plaintiff claims that "all Defendants are liable" for medical negligence and intentional infliction of emotional distress under the FTCA. Am. Compl. ¶ 54. However, as this Court previously explained, "[t]he United States is the only proper defendant in a suit brought pursuant to the FTCA." Op. & Order 15, ECF 50 (citing *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998); *Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998)). Therefore, the Court dismisses all Defendants, except for the United States, from Plaintiff's FTCA claim.

The government moves to dismiss Plaintiff's FTCA claim to the extent it is based on the events at FCI Talladega, because tort claims brought under the FTCA "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Plaintiff currently resides at FCI Victorville, which is located in the Central District of California. Plaintiff's medical care at FCI Talladega occurred in the Northern District of Alabama. As such, this Court is not a proper venue for the FCI Talladega conduct. The Court therefore grants the government's Rule 12(b)(3) motion and dismisses the FTCA claim to the extent it is based on the FCI Talladega conduct. The claim is dismissed without prejudice so that Plaintiff may, if he chooses, file the claim in a proper venue.[4]

///

///

---

[4] Plaintiff initially moved to transfer venue to the Central District of California, Pl.'s Resp. 11, but has since withdrawn that request, Pl.'s Mot. Terminate Change Venue Mot., ECF 106.

## CONCLUSION

For the reasons discussed, the Court grants Defendants' Motion to Dismiss [86]. Plaintiff's *Bivens* claim is dismissed without prejudice as to the Talladega Defendants and with prejudice as to all other Defendants. Plaintiff's FTCA claim arising from his treatment at FCI Talladega is dismissed without prejudice. Therefore, Plaintiff's FTCA claim against the United States related to his medical care at FCI Sheridan is the sole remaining claim in this action.

IT IS SO ORDERED.

DATED: October 25, 2020.

*Marco Hernandez*

MARCO A. HERNÁNDEZ
United States District Judge