IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ISRAEL GARCIA, JR.,

        Plaintiff,

v.

The UNITED STATES OF AMERICA,

        Defendant.

No. 3:18-cv-00176-HZ

OPINION & ORDER

Israel Garcia, Jr.
USP Victorville
P.O. Box 3725
Adelanto, California 92301

    Plaintiff Pro se

Scott Erik Asphaug
UNITED STATES ATTORNEY
Jared Hager
ASSISTANT UNITED STATES ATTORNEY
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

    Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Pro se Plaintiff Israel Garcia, Jr., brings this action against Defendants the United States of America, the United States Bureau of Prisons ("BOP"), and several individuals for claims arising from his medical treatment while incarcerated at Federal Correctional Institution Sheridan ("FCI Sheridan") and Federal Correctional Institution Talladega ("FCI Talladega"). On October 25, 2020, this Court granted Defendants' motion to dismiss Plaintiff's *Bivens* claims [111]. The Court also dismissed Plaintiff's claims under the Federal Tort Claims Act ("FTCA") arising from his treatment at FCI Talladega, leaving Plaintiff's FTCA claims against the United States arising from his medical care at FCI Sheridan as the only remaining claims. Defendant the United States now moves for summary judgment on Plaintiff's remaining FTCA claims. For the reasons discussed below, the Court grants in part and denies in part Defendant's motion for summary judgment.

## BACKGROUND

Plaintiff Israel Garcia, Jr. was incarcerated at FCI Sheridan in Oregon from December 18, 2013, until he was transferred to FCI Talladega in Alabama on April 15, 2016. Def. Mot. 3. On December 26, 2017, Plaintiff was transferred to FCI Victorville in California, where he currently resides. *Id.*

On December 19, 2015, when he was incarcerated at FCI Sheridan, Plaintiff experienced lower abdominal pain and vomiting. Am. Compl. ¶ 17. He was seen by registered nurse Kristina Behrens ("RN Behrens"), who noted in Plaintiff's medical record that he was "complaining of umbilical and suprapubic abdominal discomfort." Grasley Decl. Ex. 4, ECF 125-4. RN Behrens reported that Plaintiff described the abdominal pain as a constant ache, denied right-sided abdominal pain, and reported vomiting twice. *Id.* RN Behrens noted that Plaintiff's physical

exam showed a soft abdomen without rigidity and normal bowel sounds. *Id.* She consulted the on-call nurse practitioner and gave Plaintiff injections of medications for pain and nausea. *Id.* She also instructed Plaintiff to follow-up as needed and to "return immediately if condition worsens." *Id.* Dr. Andrew Grasley, clinical director at FCI Sheridan, signed the treatment record but did not see Plaintiff at that time. *Id.*

Plaintiff saw RN Behrens again the following day, December 20, 2015, because of recurrent abdominal pain. Grasley Decl. Ex. 5, ECF 125-5. At that time, Plaintiff's pain had moved from midline abdomen to the right side but was less severe than the day before. *Id.* RN Behrens reported that Plaintiff did not have nausea or vomiting at that time. *Id.* Plaintiff reported his pain as 8 out of 10 on December 19, 2015, and 6 out of 10 on December 20, 2015. Behrens Decl. ¶ 17. RN Behrens again consulted the nurse practitioner on call and administered pain medication. Grasley Decl. Ex. 5.

Plaintiff alleges that on December 22, 2015, he "was in a lot of pain and couldn't lay down because of the excruciating pain," but he was not seen by medical staff. Am. Compl. ¶ 22. He states that he continued to be "in a lot of pain on and off for about 11 months" and "took all kinds of pain pills" during that time. *Id.* Plaintiff did not seek further medical evaluation or treatment during the remaining time he was at Sheridan FCI. Def. Mot. 7.

On November 15, 2016, seven months after he was transferred to FCI Talladega, Plaintiff was seen by medical staff for severe abdominal pain. Am. Compl. ¶ 24. Plaintiff continued to have abdominal pain over the next several days, and on November 22, 2016, he developed fever, chills, and increased abdominal pain. *Id.* ¶¶ 26-32. He was sent to a local hospital where diagnostic imaging showed that his appendix had ruptured. *Id.* ¶ 32. He underwent emergency

3 – OPINION & ORDER

surgery on that day. *Id.* He then had a second surgery on November 29, 2016, to remove part of his intestines and colon. *Id.* ¶ 34.

Plaintiff filed this action on January 26, 2018, bringing claims against individual Defendants at FCI Sheridan pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Plaintiff filed an Amended Complaint on April 22, 2018, in which he raised new claims related to the medical treatment he received at FCI Talladega and added FTCA claims against the United States. This Court granted Defendants' motion to dismiss all claims except the FTCA claims related to Plaintiff's medical treatment at FCI Sheridan. Plaintiff asserts claims against the United States under the FTCA for intentional infliction of emotional distress ("IIED") and medical negligence. Defendant moves for summary judgment on those claims.

Before moving for summary judgment, the Defendant served written discovery requests on Plaintiff, including requests for admission and interrogatories. Hager Decl. ¶ 2. Plaintiff did not respond to Defendant's request. *Id.* ¶ 4. Defendant filed its motion for summary judgment on September 20, 2021, and the Court set October 12, 2021, as the deadline for Plaintiff to respond. On January 18, 2022, Plaintiff filed a motion for extension of time to respond. The Court granted an extension until March 7, 2022. Plaintiff did not file a response by the new deadline. Therefore, the Court rules on Defendant's motion without having received a response from Plaintiff.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendant argues that it should be granted summary judgment on Plaintiff's IIED claim because the Court does not have subject matter jurisdiction over that claim under the FTCA. Defendant asserts that it is entitled to summary judgment on Plaintiff's medical negligence claim because Plaintiff presents no evidence establishing that FCI Sheridan medical staff breached the applicable standard of care under Oregon law, Plaintiff cannot establish causation, and Plaintiff is more than 50% responsible for his injuries.

I.      **Plaintiff's Failure to Respond to the Motion or Discovery Requests**

Plaintiff failed to respond to Defendant's written discovery requests and did not file a response to Defendant's motion for summary judgment. Nevertheless, the burden remains on Defendant to show why summary judgment is warranted. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) ("Under the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition."). Thus, a court cannot grant a defendant's motion for summary judgment solely because the plaintiff failed to respond. *Heinemann v. Satterberg*, 731 F.3d 914, 917-18 (9th Cir. 2013).

But while the Court cannot grant summary judgment by default, under Federal Rule of Civil Procedure 56(e)(2), Plaintiff's "failure to respond to a fact asserted in the motion permits a court to consider the fact undisputed for the purposes of the motion." *Heinemann*, 731 F.3d at 917 (quoting Fed. R. Civ. P. 56(e)(2)). As evidence to support its motion, Defendant presents Plaintiff's medical treatment records and declarations of RN Behrens and Dr. Grasley. *See* Behrens Decl., ECF 124; Grasley Decl., ECF 125. The only evidence Plaintiff presents, other than the allegations in his Complaint, is a letter from Dr. Michael Flores, M.D., attached to his Amended Complaint, to which Defendant does not object. Am. Compl., Ex. A.[1]

II.     **Claims under the FTCA**

"A party may bring an action against the United States only to the extent that the government waives its sovereign immunity." *Valdez v. United States*, 56 F.3d 1177, 1179 (9th

---

[1] The opinion letter from Dr. Flores reviewing Plaintiff's medical treatment is not presented in the form of a sworn affidavit and was not submitted in opposition to Defendant's motion for summary judgment. In its motion, Defendant does not ask the Court to disregard Dr. Flores's letter and does not oppose the Court considering it as Plaintiff's evidence. Rather, Defendant addresses and presents rebuttal arguments opposing Dr. Flores's stated opinions. The Court, therefore, considers Dr. Flores's letter as Plaintiff's evidence.

Cir. 1995). The government has waived its sovereign immunity under the Federal Tort Claims Act (FTCA) for claims "arising out of the negligent conduct of government employees acting within the scope of their employment." *Soldano v. United States*, 453 F.3d 1140, 1145 (9th Cir. 2016); 28 U.S.C. §§ 2671-80. Whether an employee was acting within the scope of her employment is decided using the law of the state in which the alleged tort occurred. 28 U.S.C. § 1346 (b)(1); *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 876 (9th Cir. 1992). Because the alleged tortious conduct occurred while Plaintiff resided at FCI Sheridan, Oregon law applies.

    **A.**     **Intentional Infliction of Emotional Distress**

Defendant first argues that the court does not have subject matter jurisdiction over Plaintiff's claim for IIED because the FTCA's waiver of sovereign immunity excludes certain intentional torts. 28 U.S.C. § 2680 lists exceptions to the waiver of the sovereign immunity by the United States under the FTCA, including "[a]ny claim arising out of assault, battery, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Courts have previously held that § 2680(h) generally excludes intentional torts from the FTCA's waiver of sovereign immunity. *See Levin v. United States*, 568 U.S. 503, 507 (2013) ("We have referred to § 2680(h) as the "intentional tort exception."). But § 2680(h) does not remove all intentional torts from the FTCA's waiver. *Id.* The Ninth Circuit has specifically recognized IIED claims under the FTCA. *See Sheehan v. United States*, 896 F.2d 1168, 1172 (9th Cir. 1990) ("We hold that a claim based

7 – OPINION & ORDER

on conduct constituting the tort of intentional infliction of emotional distress is not excluded as a matter of law from FTCA by § 2680(h).").

But in determining whether the United States has waived sovereign immunity, courts must look to the defendant's underlying conduct that gives rise to the plaintiff's IIED claim. Regardless of the plaintiff's characterization of the cause of action, § 2680(h) bars suits for claims based on conduct which constitutes one of the excepted torts. *Id.*; *see Baker v. U.S. Dep't of Agric.,* No. 04-6033-HO, 2004 WL 1274407, at *3 (D. Or. June 8, 2004) (discussing *Sheehan* and holding that the court lacked subject matter jurisdiction over the plaintiff's IIED claim under the FTCA because it was based on conduct that constitutes false imprisonment—a tort that is specifically barred by § 2680(h)).

Defendant asserts that it has not waived sovereign immunity under the FTCA because Plaintiff's IIED claim is actually a disguised claim for fraudulent misrepresentation, an excluded tort listed under § 2680(h). *See* Def. Mot. 13 ("Though labeled as a claim for IIED, [Plaintiff's] tort allegations suggest harm caused by FCI Sheridan staff intentionally holding information about his medical condition."). But Defendant inserts allegations into Plaintiff's Complaint that Plaintiff does not make. Plaintiff bases his IIED claim on Defendant's alleged willful indifference to Plaintiff's serious medical condition. In his Amended Complaint, Plaintiff states that "[t]he heart and soul of the Plaintiff's intentional infliction of emotional pain and distress claims stems from the willful and knowing aggravation of Plaintiff's serious medical need and PTSD – The Defendants cruel indifference to emergency medical need." Am. Compl. ¶ 57. Contrary to Defendant's assertion, the alleged underlying conduct by Defendant that gives rise to Plaintiff's IIED claim is indifference to his medical need, not fraudulent misrepresentation. The alleged conduct on which Plaintiff bases his IIED claim constitutes medical negligence, which is

8 – OPINION & ORDER

not barred by § 2680(h). Thus, under the FTCA, the United States has waived sovereign immunity, and the Court has subject matter jurisdiction over Plaintiff's IIED claim.

Under Oregon law, to succeed on an IIED claim, a plaintiff must show: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *Bibeau v. Pac. Nw. Rsch. Found., Inc.,* 339 F.3d 942, 947 (9th Cir. 2003) (quoting *McGanty v. Staudenraus,* 321 Or. 532, 543, 901 P.2d 841, 849 (1995)). To prove intent, a plaintiff must show that the defendant acted with the purpose of causing them severe emotional distress. *McGanty*, 321 Or. at 543-44. But a plaintiff need not show that the defendant acted with a malicious motive; the intent element is also satisfied if the defendant "knows that such distress is certain, or substantially certain, to result from his conduct." *Delaney v. Clifton*, 180 Or. App. 119, 132, 41 P.3d 1099, 1108 (2002) (internal quotations and citation omitted).

Plaintiff alleges that the FCI Sheridan medical staff acted with the intent to cause him emotional distress because they "continually failed to stop the pain and suffering" and acted with deliberate indifference to his serious medical need. Am. Compl. ¶ 60. But Plaintiff presents no evidence that RN Behrens or Dr. Grasley withheld medical care for the purpose of causing him to suffer severe emotional distress. Nor does Plaintiff show that RN Behrens or Dr. Grasley knew that the medical care they withheld would cause him severe emotional distress. Plaintiff's medical records from FCI Sheridan show that on December 19, 2015, RN Behrens, under the supervision of Dr. Grassley, saw and evaluated Plaintiff for his complaints of abdominal pain. RN Behrens documented her findings and the reasons for the actions she took. She treated Plaintiff with medication for pain and nausea. She saw Plaintiff again on December 20, 2015,

9 – OPINION & ORDER

acknowledged his complaints, performed an evaluation, and again gave him pain medication. Plaintiff presents no evidence that RN Behrens or any other staff at FCI Sheridan disregarded his pain or suffering or withheld care with the intention of causing him harm. Plaintiff also fails to show that the FCI Sheridan knew that he had ongoing abdominal pain after December 22, 2015. Thus, Plaintiff presents no evidence to satisfy the intent element of his IIED claim.

Plaintiff also cannot show that Defendant's conduct was outrageous or extreme. In his review of the case, Dr. Flores describes the medical care Plaintiff received as "inappropriate and negligent." Am. Compl., Ex. A. But neither Dr. Flores nor Plaintiff claim the medical treatment provided at FCI Sheridan transgressed the bounds of socially tolerable conduct. Plaintiff's medical records from FCI Sheridan establish that RN Behrens adhered to BOP nursing protocols in her evaluation and treatment of Plaintiff's abdominal pain. Even if RN Behrens could have taken a different course of action, her conduct cannot be characterized as outrageous or extreme as required to prove IIED.

Because Plaintiff presents no evidence that shows the medical staff at FCI Sheridan intended to cause him emotional distress or engaged in outrageous conduct, the Court grants summary judgment for Defendant on Plaintiff's IIED claim.

### B. Medical Negligence

Plaintiff alleges that Defendant breached its duty of care by "not taking immediate action on an obvious serious medical need." Am. Compl. ¶ 60. Plaintiff claims that the FCI Sheridan medical staff failed to properly evaluate and treat Plaintiff's abdominal pain and failed to diagnose his appendicitis.

Under Oregon law, establishing medical negligence requires proof that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered harm

10 – OPINION & ORDER

measurable in damages; and (4) there is a causal link between the breach and the harm. *Zehr v. Haugen*, 318 Or. 647, 653-54, 871 P.2d 1006, 1010 (1994).[2] In providing medical care to incarcerated individuals, the staff at FCI Sheridan are required "to exercise the degree of care, knowledge and skill ordinarily required by the average provider of that type of medical service." *Turner v. Multnomah Cnty.*, No. 3:12-CV-01851-KI, 2015 WL 3492705, at *12 (D. Or. June 3, 2015) (quoting *Curtis v. MRI Imaging Servs. II*, 327 Or. 9, 14, 956 P.2d 960, 962 (1998)).

Defendant does not dispute that it owed a duty to Plaintiff when he was incarcerated at FCI Sheridan. Defendant also does not contest that Plaintiff suffered harm when he experienced a ruptured appendix at FCI Talladega. But Defendant argues that (1) Plaintiff has not shown that the medical staff at FCI Sheridan breached the standard of care, (2) Plaintiff cannot establish a causal link between his medical care at FCI Sheridan and the ruptured appendix he suffered eleven months later at FCI Talladega, and (3) Plaintiff is more than 50% responsible for his own injury.

Defendant asserts that Plaintiff's medical records from FCI Sheridan show that Plaintiff received "appropriate, responsive medical care." Def. Mot. 14. Defendant relies on the "Clinical

---

[2] Under Oregon jurisprudence, "the more traditional duty-breach and proximate cause analysis in a common negligence claim are subsumed in the question whether the defendant's conduct resulted in a reasonably foreseeable and unreasonable risk of harm to a protected interest of the kind plaintiff suffered." *Piazza v. Kellim*, 360 Or. 58, 71, 377 P.3d 492, 500 (2016). But courts still apply a duty-breach and proximate cause analysis where "the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty" *Id.* (quoting *Fazzolari v. Portland School Dist. NO. 1J*, 303 Or. 1, 17, 734 P.2d 1326, 1336 (1987)). Oregon courts recognize that for professional malpractice claims, a special relationship exists between the plaintiff and the defendant. *See Stevens v. Bispham,* 316 Or. 221, 227-28, 851 P.2d 556, 560 (1993) (discussing the requirements for a claim of negligence against a professional person who performed a service for the plaintiff). Therefore, in medical malpractice cases, the special relationship between patient and medical provider implies a standard of care that trumps the general foreseeability standard described in *Fazzolari*. *See Moser v. Mark*, 223 Or. App. 52, 55-56, 195 P.3d 424, 426 (2008) (confirming that the traditional duty-breach and proximate cause analysis applies to medical malpractice claims).

Encounter" documentation of care notes on December 19, 2015 and December 20, 2015 by RN Behrens along with the declarations of RN Behrens and Dr. Grassley. RN Behrens asserts that her treatment of Plaintiff was "consistent with the applicable standard of care for a patient presenting with his symptoms." Behrens Decl. ¶ 19. She notes that on December 19, 2015, Plaintiff was not writhing in pain, and based on her examination, he did not have signs of appendicitis. *Id.* ¶ 20. When she saw Plaintiff again the next day, he described slightly less pain. *Id.* ¶ 22. Dr. Grasley reviewed and signed RN Behrens encounter notes. He states that based on the medical records, Plaintiff's medical condition was sufficiently treated and did not present a medical emergency for suspected appendicitis. Grasley Decl. ¶ 14.

Plaintiff presents the opinion letter of Dr. Flores as evidence that the medical staff at FCI Sheridan provided care that was below the required standard. In his review of Plaintiff's medical records from both FCI Sheridan and FCI Talladega, opines "that the medical care from the very beginning was inappropriate and negligent," and describes specific investigations that should have been undertaken. Am. Compl. Ex. A. Dr. Flores describes Plaintiff's symptoms, vital signs, laboratory results, and physical exam findings documented in the clinical encounter notes and concludes that Plaintiff's condition on December 19, 2015 "warranted further work up[.]" *Id.* According to Dr. Flores, RN Behrens should have asked for a medical physician to evaluate the patient, and Plaintiff's condition warranted "intense observation and/or and [sic] ultrasound which was not ordered." *Id.*

Because of conflicting opinions regarding Plaintiff's condition on December 19, 2015, and the care he should have received, Plaintiff has, at minimum, created a question of fact as to whether the FCI Sheridan medical staff failed to adhere to the appropriate standard of care in evaluating and treating Plaintiff's abdominal pain.

12 – OPINION & ORDER

Defendant also argues that Plaintiff presents no evidence to establish causation. To prove medical negligence, Plaintiff must present facts showing that Defendant's conduct was a cause of Plaintiff's harm. See *Tomlinson v. Metro Pediatrics, LLC*, 362 Or. 431, 456-57, 412 P.3d 133, 148 (2018) ("To state a negligence claim, a plaintiff must allege facts that would allow a reasonable factfinder to determine that the defendant's negligence causes the plaintiff harm."). "In other words, a medical malpractice claim requires proof that the negligent medical care causes an injury that nonnegligent care would have avoided." *Smith v. Providence Health & Servs.-Oregon*, 270 Or. App. 325, 332, 347 P.3d 820, 824 (2015).

Defendant claims that Plaintiff "has set forth no facts to support the allegations that FCI Sheridan had notice of [his] continued pain" after December 22, 2015. Def. Mot. 16. Defendant also asserts that the passage of eleven months from the time he was first seen for abdominal pain and the time his appendix ruptured prevents Plaintiff from connecting "any FCI Sheridan staff conduct to the harm that befell [him] at FCI Talladega." *Id.* Dr. Flores opines that Plaintiff had an "atypical presentation" of appendicitis and "the delay in treatment, misdiagnosis, and gross negligence has led to an outcome for Mr. Garcia that should have never happened."[3] Am. Compl. Ex. A. As with the breach element, conflicting opinions about causation create a dispute of fact.

Lastly, Defendant argues that Plaintiff bears more than half of the responsibility for his harm because he did not follow the medical staff's written and verbal guidance. Under Oregon

---

[3] In making this conclusion, Dr. Flores does not make explicitly clear whether he is referring to the delay in treatment at FCI Sheridan, FCI Talladega, or both. The Court views the facts and makes inferences in the light most favorable to Plaintiff. The Court can reasonably infer from Dr. Flores's statement that "[Plaintiff's] initial presentation one year prior to his hospitalization clinically warranted further work up for the symptoms he presented with on 12/19/2015" that Dr. Flores believes Plaintiff's symptoms of appendicitis started at FCI Sheridan. Thus, the Court reads this statement by Dr. Flores to say that the delay in treatment beginning at FCI Sheridan led to Plaintiff's subsequent ruptured appendix diagnosed at FCI Talladega eleven months later.

13 – OPINION & ORDER

law, a "[p]laintiff is not entitled to recover any damages if the court finds that [the plaintiff] is more than fifty percent at fault for [their] injuries." *Bloodsworth v. United States*, No. CV 08-522-SU, 2010 WL 170261, at *4 (D. Or. Jan. 15, 2010) (citing Or. Rev. Stat. § 31.600). Plaintiff claims that the failure of FCI Sheridan medical staff to properly evaluate his abdominal pain caused his injuries. Defendant asserts that Plaintiff decision to "[choose] inaction and self-help measures" rather than seek additional evaluation and treatment for his ongoing pain contributed more to his to his injury than any negligence on the part of the FCI Sheridan medical staff. Def. Mot. 18. Determining the relative contribution of the parties to Plaintiff's alleged harm would require the Court to resolve disputed facts. As such, the Court declines to determine whether Plaintiff was more than 50% responsible for his injury.

Viewing the facts and making inferences in the light most favorable to Plaintiff, the Court finds that Defendant is not entitled to judgment as a matter of law on Plaintiff's medical negligence claim.

## CONCLUSION

The Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment [123].

IT IS SO ORDERED.

DATED: _____April 12, 2022\_\_\_\_\_.

_____
MARCO A. HERNÁNDEZ
United States District Judge

14 – OPINION & ORDER