IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ISRAEL GARCIA, JR., | No. 3:18-cv-00176-HZ |
| Plaintiff, | FINDINGS OF FACT & CONCLUSIONS OF LAW |
| v. | |
| The UNITED STATES OF AMERICA, | |
| Defendant. | |

John D. Burgess
Law Offices of Daniel Snyder
1000 SW Broadway, Suite 2400
Portland, OR 97205

    Attorney for Plaintiff

Austin Rice-Stitt
United States Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204

Danielle Rogowski
DOJ-Bop
Federal Bureau of Prisons FDC SeaTac
P.O. Box 13901
SeaTac, WA 98198

    Attorneys for Defendant

1 – FINDINGS OF FACT & CONCLUSIONS OF LAW

HERNÁNDEZ, District Judge:

This case involves the medical care Plaintiff Israel Garcia, Jr. received while incarcerated at Federal Correctional Institution ("FCI") Sheridan. Plaintiff brings a claim for medical negligence against Defendant the United States of America under the Federal Tort Claims Act ("FTCA"). Plaintiff alleges that medical staff at FCI Sheridan failed to properly evaluate him when he sought care for severe abdominal pain in December 2015. According to Plaintiff's claim, the medical staff's negligence caused him to require a complicated surgery for a ruptured appendix in November 2016 when he was housed at FCI Talladega. Plaintiff alleges that due to Defendant's failure to diagnosis his condition, he suffered excruciating, experienced a severe infection and ICU stay, and has ongoing pain and discomfort from of an incisional hernia.

The Court conducted a two-day bench trial on May 31 and June 1, 2023. The following are the Court's Findings of Fact and Conclusions of Law from that trial. See Fed R. Civ. P. 52(a). As explained below, the Court finds for Defendant on Plaintiff's medical negligence claim.

## FINDINGS OF FACT

Plaintiff was incarcerated at FCI Sheridan in Oregon from December 18, 2013, until he was transferred to FCI Talladega in Alabama on April 15, 2016. In December 2015, Plaintiff was housed in the special housing unit ("SHU") at FCI Sheridan. Around 4 AM on December 19, 2015, Plaintiff experienced sudden onset of severe abdominal pain. He asked a prison officer to call medical staff. Plaintiff was seen by a registered nurse, Kristina Behrens, in the SHU medical office at 10:12 AM that day. Nurse Behrens found that Plaintiff had "umbilical and suprapubic abdominal discomfort." Ex. 1 at 61. Plaintiff reported two episodes of vomiting and a normal bowel movement. *Id.* He did not have right-sided abdominal pain. *Id.* He had a temperature of

100.8 degrees Fahrenheit and a heartrate of 101 beats per minute. *Id.* He rated his pain as eight out of ten. *Id.* Nurse Behrens noted Plaintiff's pain to be exacerbated by sudden movements and relieved by lying down. *Id.*

Nurse Behrens performed a physical examination. She noted that Plaintiff appeared to be in pain but was not "writhing in pain." *Id.* at 62. He was not pale or diaphoretic. *Id.* His abdomen had normal bowel sounds and was soft to palpation with no rigidity, rebound tenderness, or right lower quadrant tenderness. *Id.* He had midline abdominal tenderness and suprapubic tenderness. *Id.* A urine dipstick test showed trace blood and no other abnormalities. *Id.*

Nurse Behrens testified that nothing reported in her clinical encounter note on that day indicated an emergency. She noted that Plaintiff's physical exam did not suggest appendicitis because he had midline rather than right lower quadrant tenderness and had no rebound tenderness. After performing the physical examination, Nurse Behrens called the on-call nurse practitioner and relayed Plaintiff's subjective findings, vital signs, and physical exam findings. The nurse practitioner instructed Nurse Behrens to give Plaintiff medication for pain and nausea. Following the nurse practitioner's order, Nurse Behrens gave Plaintiff intramuscular injections of ketorolac and promethazine. *Id.* at 63. Plaintiff was instructed to rest and drink water and to "notify medical if his current condition worsens." *Id.* Nurse Behrens clinical encounter note was cosigned by Dr. Andrew Grasley, M.D. on December 21, 2015. *Id.* at 65.

Nurse Behrens saw Plaintiff again at the SHU medical office at 10:17 AM on December 20, 2015. *Id.* at 66. She reported in her clinical encounter note that Plaintiff's abdominal pain returned around 3 AM that morning. *Id.* When she first saw him that day, Plaintiff reported the pain to be in the right upper quadrant. *Id.* Later in the assessment, he reported the pain to be more in the right lower quadrant. *Id.* According to Nurse Behrens's clinical encounter note, Plaintiff

3 – FINDINGS OF FACT & CONCLUSIONS OF LAW

had no nausea or vomiting, reported having a normal bowel movement, and rated his pain as six out of ten. *Id.* On that visit, Plaintiff had a temperature of 99.1 degrees Fahrenheit, had a heart rate of 90 beats per minute, and did not appear to be in pain. On physical examination, Nurse Behrens noted right lower quadrant tenderness but no rebound tenderness, guarding, rigidity, or Rovsing's sign,[1] which could indicate appendicitis if present. *Id.*

Nurse Behrens again consulted the nurse practitioner by phone, who gave a verbal order for ketorolac for pain. *Id.* at 68. Nurse Behrens gave Plaintiff an intramuscular injection of that medication. *Id.* No lab tests or scans were ordered at that time. Plaintiff was again instructed to report any changes in his symptoms. *Id.* The December 20, 2015 clinical encounter note was cosigned by Dr. Grasley on December 21, 2015. *Id.* at 69.

Plaintiff's testimony about the December 20, 2015 visit conflicts with the medical record in some respects. Plaintiff testified that he told a prison officer that his pain was worse than the day before rather than better. He testified that Nurse Behrens saw him in the hallway outside his cell rather than in the SHU medical office and that she gave him two shots while his hands were cuffed behind his back. Nurse Behrens testified that she must have examined Plaintiff in the SHU medical office because vital signs could only be taken using a "vital signs tower" located in the exam room. Tr. 188:17-21. Nurse Behrens also testified that she would never give injections of medications to people in handcuffs because it is not a safe practice.

Plaintiff testified that he continued to have pain that waxed and waned over the next five months. He did not ask to be seen by medical staff during that time. Plaintiff testified that he did

---

[1] Rovsing's sign is elicited when a medical provider puts pressure on the left side of the abdomen and the patient feels pain on the right side. Tr. 182:1-4.

4 – FINDINGS OF FACT & CONCLUSIONS OF LAW

not make any further complaints or requests to be seen because medical staff had already told him nothing was wrong.

Plaintiff was transferred from FCI Sheridan to FCI Talladega in Alabama in April 2016. On May 16, 2016, he had a health screen visit with Nurse Schaefer at FCI Talladega. Ex. 508. According to the encounter note, Plaintiff had no fever, weight loss, or "painful condition" at that time. *Id.* The note shows that he was taking no medications. *Id.* Plaintiff testified that he had pain on that day, but he did not report the pain because it was less than eight out of ten and not severe. Plaintiff did not complain or seek medical attention for the next five months. He testified that he suffered pain during that time but the pain was bearable.

On the morning of November 15, 2016, Plaintiff initiated a medical visit at FCI Talladega. Ex. 1 at 86. Plaintiff reported that he had right upper abdominal pain with constipation but without nausea or vomiting. *Id.* Plaintiff reported to medical staff that he had experienced this type of abdominal pain before but it had improved on its own. *Id.* at 87. Plaintiff continued to have abdominal pain and was diagnosed with "appendicitis and localized perforation with abscess formation" on November 22, 2016. Ex. 3 at 25. On that day, Plaintiff underwent a "[l]aparoscopic appendectomy with abscess drainage" performed by Dr. David Marotta at Coosa Valley Medical Center. *Id.* at 35. In his operative report, Dr. Marotta described "a severe, long standing fibrinous exudative reaction with rupture of the appendix[.]" *Id.* Dr. Marotta extracted one-half liter of "fluorescent green pus" and reported "an extremely long standing fibrotic and intense scarring of the area." *Id.*

Plaintiff underwent a second surgery on November 29, 2016 for bowel obstruction and intra-abdominal abscess. *Id.* at 38. He had an open surgery with drainage of the abscess and removal of part of his colon. *Id.* Following the second surgery, Plaintiff developed an incisional

hernia. Plaintiff continues to suffer pain from the ongoing hernia. Plaintiff testified that the pain is constant and impacts his sleep and that he must wear a velcro belt because his "intestines stick out." Tr. 33:10-34:14.

Dr. Michael Flores, M.D., testified as an expert witness for Plaintiff. Dr. Flores received a medical degree from Michigan State University and practices general internal medicine. He has worked in private practice in Weslaco, Texas and at a clinic in Donna, Texas. Dr. Flores is licensed to practice medicine in Texas but is not board-certified in internal medicine or any other specialty. Tr. 116:13-23.

Dr. Flores reviewed Plaintiff's medical records and submitted an expert report for this matter on April 18, 2017. Dr. Flores testified that based on the clinical encounter note dated December 19, 2015, Plaintiff presented with symptoms of appendicitis. In Dr. Flores's opinion, Plaintiff's high heart rate, eight out of ten pain, low-grade fever, nausea, vomiting, and pain with movement are "pretty classic" for appendicitis. Tr. 81:4-17. Dr. Flores testified that he would have ordered lab work and a CAT scan, which is what he considers to be standard of care.

Dr. Flores also testified that appendicitis should have been suspected when Plaintiff was seen again on December 20, 2015. He stated that Plaintiff's apparent lower degree of pain compared to the prior day was because of the pain medicine he had received twenty-four hours before.

Dr. Flores next testified about the operative report from Plaintiff's surgery on November 22, 2016. Dr. Flores concluded that the longstanding inflammatory condition described in the report had been there for months. According to Dr. Flores, the report described a walled-off abscess, which may be seen in six to seven percent of cases of appendicitis. He noted that such an abscess can remain contained for months.

Dr. Edwin Irish, M.D., testified as an expert witness for Defendant. Dr. Irish graduated from the University of Vermont Medical School and is a retired general non-cardiac thoracic surgeon. He is licensed to practice medicine in Oregon and is board-certified by the American Board of Surgery. Dr. Irish practiced general surgery in Oregon for approximately 32 years. During that time, he performed around 1,500 to 2,000 appendectomies. Dr. Irish testified that based on his review of the medical records, FCI Sheridan medical staff met the standard of care in evaluating Plaintiff's abdominal pain on December 19, 2015 and December 20, 2015. In his opinion, Plaintiff did not appear to suffer from appendicitis on those days. Dr. Irish testified that Nurse Behrens documented history and physical examination on December 19, 2015 does not indicate that Plaintiff had an inflammatory condition such as appendicitis. He stated that a period of observation, as FCI Sheridan medical staff recommended, is a very valuable tool in diagnosing appendicitis.

Dr. Irish also testified that documentation from the December 20, 2015 patient encounter does not suggest that Plaintiff had appendicitis. He testified that when Nurse Behrens saw him twenty-four hours after the initial visit, Plaintiff's pain had improved and his temperature and heart rate had decreased. Dr. Irish noted that Plaintiff's "soft" abdomen and normal bowel sounds suggest that there was no inflammation in the abdomen. Dr. Irish also testified that the medications Plaintiff received the prior day for pain and nausea had no effect on his condition or physical examination on December 20, 2015. He testified that any meaningful effect of ketorolac on Plaintiff's pain would have worn off by eight hours after the dose was given, and the antiemetic effect of promethazine would have lasted no more than eight to ten hours. Dr. Irish testified that the instructions given to Plaintiff to follow up as needed and return immediately if his condition worsens fell within the standard of care. Dr. Irish concluded that on both visits with

7 – FINDINGS OF FACT & CONCLUSIONS OF LAW

FCI Sheridan medical staff in 2015, the standard of care was met because "all appropriate historical, physical examination, vital sign metrics were obtained on two occasions, conclusions were made, and appropriate follow-up was arranged." Tr. 233:19-25.

Dr. Irish next testified that Plaintiff's appendicitis diagnosed in November 2016 could not have been present in December 2015. He stated that in his experience, appendicitis does not lay dormant for eleven months. According to Dr. Irish, if Plaintiff had appendicitis in December 2015, it would have progressed within a couple of weeks, manifested by worsening pain, digestive issues, and spiking fevers. Dr. Irish gave an opinion on the meaning of the "long standing fibrinous exudative reaction" described in the operative report from Plaintiff's laparoscopic appendectomy on November 22, 2016. Ex. 3 at 35. Dr. Irish testified that a disease process lasting several days to two to four weeks would be sufficient to produce the described condition. He also testified that the reported one-half liter of fluorescent green pus is evidence against the disease process starting eleven months before. Dr. Irish opined that a person could not carry around that much pus in his abdomen for eleven months and only be minimally symptomatic. He concluded that the November 22, 2016 operative report reflects an appendicitis that developed two to four weeks before the appendectomy.

## CONCLUSIONS OF LAW

The Court has jurisdiction over Plaintiff's claim against the United States of America under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346(b), 2671-80. The government has waived its sovereign immunity under the FTCA for claims "arising out of the negligent conduct of government employees acting within the scope of their employment." *Soldano v. United States*, 453 F.3d 1140, 1145 (9th Cir. 2016); 28 U.S.C. §§ 2671-80. The substantive law of the state governs liability under the FTCA. *See Oberson v. U.S. Dep't of Agric.,* 514 F.3d 989,

997 (9th Cir. 2008) (citing 28 U.S.C. § 1346(b)(1)). Plaintiff's sole claim under the FTCA arises from the medical care he received while incarcerated at FCI Sheridan in Oregon. Because the alleged tortious conduct occurred at FCI Sheridan, Oregon law applies.

Under Oregon law, establishing medical negligence requires proof that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered harm measurable in damages; and (4) there is a causal link between the breach and the harm. *Zehr v. Haugen*, 318 Or. 647, 653-54, 871 P.2d 1006, 1010 (1994). Plaintiff bears the burden of proving these elements by a preponderance of evidence.

In providing medical care to incarcerated individuals, the staff at FCI Sheridan must "exercise the degree of care, knowledge and skill ordinarily required by the average provider of that type of medical service." *Turner v. Multnomah Cnty.*, No. 3:12-CV-01851-KI, 2015 WL 3492705, at *12 (D. Or. June 3, 2015) (quoting *Curtis v. MRI Imaging Servs. II*, 327 Or. 9, 14, 956 P.2d 960, 962 (1998)). The Court finds that Defendant owed a duty to Plaintiff to provide medical care that falls within the community standard for similar medical treatment.

To establish breach, Plaintiff must show by a preponderance of evidence that the treatment he received from BOP medical staff at Sheridan FCI fell below the community standard of care. The standard of care must be established through expert testimony. *Trees v. Ordonez*, 354 Or. 197, 207, 311 P.3d 848, 854 (2013). The Court finds that Plaintiff failed to meet his burden of proving by a preponderance of evidence that FCI Sheridan medical staff breached their duty to provide standard of care in evaluating his symptoms on December 19 and December 20, 2015.

Plaintiff's medical records from FCI Sheridan show that he had a sudden onset of eight out of ten abdominal pain with nausea, vomiting, and low-grade fever on December 19, 2015.

9 – FINDINGS OF FACT & CONCLUSIONS OF LAW

Nurse Behrens examined his abdomen, performed a urinalysis, and consulted the on-call nurse practitioner. No other laboratory evaluation or imaging was done. After consulting the on-call nurse practitioner and receiving a verbal order, Nurse Behrens administered medications for pain and nausea. She instructed Plaintiff to return if his symptoms got worse. Nurse Behrens testified that she did not specifically recall evaluating Plaintiff on December 19, 2015, but after reviewing her notes from that visit, she would not have done anything differently.

Plaintiff's medical records show that Nurse Behrens saw him again on December 20, 2015 in the SHU medical office. On that morning, Plaintiff woke up again with abdominal pain on the right side of his abdomen. In the clinical encounter note, Nurse Behrens documented Plaintiff's pain as six of ten, which was less than the day before. The record shows that Plaintiff no longer had nausea, vomiting, or fever. Plaintiff's physical exam again showed a soft abdomen without peritoneal signs. Nurse Behrens consulted the on-call nurse practitioner, administered another intramuscular dose of pain medication, and instructed Plaintiff to return if his condition worsened.

Plaintiff disputed many aspects of the medical record for the December 20, 2015 visit. First, Plaintiff testified that Nurse Behrens saw and examined him in the hallway just outside his cell while his hands were handcuffed behind his back. He stated that he received two shots of medication while he was standing in that position. Second, Plaintiff testified that the report of six out of ten pain in the record is false. Plaintiff testified that he told Nurse Behrens and the prison officer that his pain was worse on that day. Nurse Behrens testified that she could not have seen Plaintiff in the hallway because the vital signs in the record could only have been obtained using the equipment in the SHU medical office. She also testified that she would never administer an intramuscular injection to someone who is handcuffed with his hands behind his back because it

10 – FINDINGS OF FACT & CONCLUSIONS OF LAW

is not safe practice. The Court finds the medical record documentation and Nurse Behrens testimony to be more probative and credible than Plaintiff's testimony about his recollection of the December 20, 2015 visit.

Defendant's expert, Dr. Irish, is a board-certified general surgeon who routinely diagnosed and treated appendicitis during his more than thirty-year career. Dr. Irish testified that based on the findings documented in the record, no further evaluation was indicated on December 19, 2015. Dr. Irish concluded that the care documented in Nurse Behrens's clinical encounter note met the standard of care and that observation of Plaintiff's condition was the appropriate course of action. Dr. Irish also testified that because Plaintiff's symptoms were better and his pain was less on December 20, 2015, BOP medical staff's decision to continue to observe Plaintiff without further evaluation met the standard of care.

Plaintiff's expert, Dr. Flores, works as general internal medicine doctor. He is licensed to practice medicine in Texas but is not board-certified. He does not do surgery and has not operated on a patient with appendicitis since he was in medical school. Dr. Flores testified that Plaintiff likely had appendicitis on December 19, 2015 and that the evaluation by BOP medical staff should have included lab work and a CAT scan. Dr. Flores also stated that Plaintiff's lower pain level was due to the pain medication he had received twenty-four hours earlier. Dr. Irish disputes that reasoning because in his experience, the effects of the pain medication typically wears off by eight hours after it has been received.

The Court finds the testimony of Dr. Irish significantly more probative than that of Dr. Flores. First, Dr. Irish is a board-certified surgeon who has extensive experience diagnosing and treating appendicitis. Dr. Flores is not board-certified, does not perform surgery for appendicitis, and has considerably less experience diagnosing appendicitis. The greater probative value of Dr.

Irish's opinion that no additional testing was needed on December 19 and December 20, 2015 is supported by the fact that Plaintiff's symptoms improved and he did not seek medical care again for eleven months.

Thus, the Court finds that Plaintiff has not shown by a preponderance of evidence that BOP medical staff at Sheridan FCI breached their duty to provide standard of care medical treatment to Plaintiff. Because Plaintiff does not prove the breach element, the Court need not address damages and causation. The Court finds for Defendant on Plaintiff's medical negligence claim under the FTCA.

## CONCLUSION

The Court finds for Defendant on Plaintiff's FTCA claim. Judgment shall be entered in favor of Defendant. Defendant shall submit a proposed form of judgment consistent with this ruling within fourteen days.

IT IS SO ORDERED.

DATED:_____June 27, 2023_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge